This bill will be in case number 24-1195, McKinney v. County of Dutchess. Ms. McKinney, whenever you're ready. Good morning, judges. Thank you for listening to me today. I was a correction officer who had an injury May 2, 2018. Was assaulted by an enemy. My issues that I bring before the court is a few. I have discrimination, a violation of ADA, termination of employment, and FMLA. Although I had this injury in 2018, the county decided on the following day, May 3, that I was accepted to 07C. Every 30 days, I will put in FMLAs. However, they only agreed to the first month, which is only for 30 days. However, they extended it for six weeks, going against their own regulations. They were never putting in all my additional months for approximately five months. However, several months later, while I was inquiring, where is my pay? They claimed they denied me because of unauthorized sick time. However, April, the month before my injury, three weeks prior, my appraisal for the year of 2017, was very good standings and even had the comment of good work and above average officer. Mentioned nothing about anything about unauthorized time because there was none. The opposing party might bring up about 2017 injury to the same risk, which was non-work related. I worked light duty. I was out of work, but they cut off my insurance, which is a task that they do, a thing that they do when they try to force you back because they did it again in 2018. I returned in 2017 as light duty. Then when my risk was better, had full extension, I went full duty. A few months later is when the attack happened. At this time, I say a discrimination because there's a lot of other officers that did way more different things, whether it was injuries or not. They did not get reprimanded. They stayed on pay. As far as public nudity, we had a sergeant that stayed on the payroll as he was incarcerated in a trial for murder. There was another officer on probation period. Wasn't even fully there for a whole year. Had a off-duty job injury, motorcycle accident. Stayed out of work for a year and a half. Was never terminated, but was receiving 207C on a motorcycle accident. All of these things have happened to me. Their own IME doctor, first IME doctor said that I should not be at work. They made him amend it three times. Then they made me see another doctor five months later. They all said that I... Excuse me, during that period, were you being paid or not paid? Not paid. They only paid me for six weeks. I don't know if you can see here. My both elbows is on the same as you see. My left wrist, I have no extension. I can go down, but I cannot bend this wrist backwards. Therefore, if I fall to my left, I can't get up. I can't defend myself. I can't push a door open. I can't go to the drive-thru, because if I do, the money of this loose change slides down. I can't insert a credit card or anything at an ATM and pull it out. I have to do everything with my right hand, a majority. However, these things... He approved me again for the injury to 207C, but yet denied me, even though my claimant of unauthorized time, even though my appraisal of 2018 says otherwise. That was very contradictive. Can I ask one question? I know we're running out of time. One thing I was trying to understand is the 207C is a state law benefit, and your claim is that it was wrongfully denied and done so on the basis of race, right? That's what makes it a discrimination claim. Was there a state court proceeding or some kind of proceeding judging the question of whether or not you were entitled to the 207C? Well, he had already signed off on it on the very next day, accepting it, but then wasn't putting in the rest of my FMLAs, so I just wasn't getting paid. They had me in a hearing three days later after my surgery, why I had 16 staples in my wrist still underneath excrutination pain and on meds, narcotics, and had me in there over a year asking me a bunch of questions, wanting to know if I can do this, do that with 16 staples in my hand. I continued to stay out of work on 207C with me reaching out to letters, several attempted letters to certify letters to the undershared. So you're getting the 207C then? Only for the six weeks it stopped because he only signed it for six weeks. So when they stopped, was there a process available to you to appeal that to somebody and have, I don't know, an administrative body decide what to do? I was trying to go through the union rep. They were trying to fight for me. All of a sudden the papers disappeared. They couldn't find the paperwork. I never got another date. So there's never been a determination separate from this court about whether the 207C was wrongfully denied. Correct. And then I broke down in my doctor's office, primary doctor, because, again, they had cut off my insurance, kept trying to force me back to work. Let me go back. The following month of my accident, in June, was my first IME doctor who they made amended three times, who said I was out of work, that I had zero pulmonary flexion, which is what I showed you with no extension. They made me wait an additional five months while they looked for another IME. During that time, I later, you know, because I was so depressed. During that period, was your position I should be working or was your position I can't work? That I can't work. And you weren't working? No. Okay. But I still wasn't getting paid through FMLA or 207C. And FMLA, I'm going to show my ignorance here, normally that's an unpaid. Yeah, I know what it is, but it's normally an unpaid status, but there must be something about your job where FMLA was paid? Well, by me being a veteran at the time, because I was in the job 11 years, 12 years or so, after 10 years they consider you a veteran, which I could get paid up to a year with half pay. That's the 207C? No, that's the FMLA. Okay. The FMLA. And like I said, it's a tactic they'd use as cutting off your insurance. When they try to force me back to work, continue to force me back to work, even at 75% disability rate, but then two months after my injury, later that year I wind up in a doctor's office. They had cut off my insurance, my medical insurance. I was diagnosed with stage 3 breast cancer, PTSD, anxiety and depression. And again, they had cut off my insurance once they found out, once I notified them that I could not return back to work anyway because of my cancer diagnosis and I was going through chemo. And the result of that, of me being under treatment, they cut off my health insurance. Then COVID hit. So mind you, I'm still not getting paid. My mortgage, I'm getting bills up the ying-yang. My mortgage not being paid, car, nothing. And you were getting workers' comp during that time? No. What made me finally start getting comp is that I wind up at my primary doctor's office, who I've had for several years. And I was in tears and they know me, so they was like, what's going on? When they came in, like, I've never seen this, like, what's going on? I told them how I've been working all my life from a young teen, never been underneath comp. I don't understand how human resources, everybody knows that I'm on comp but not getting paid. And that doctor was the one that told me that she see this happen a lot in people in my field and that I had a right to call the workers' comp advocate board, which I was naive to that. I didn't know. I wind up calling and that's when I asked them the same thing, like, how? I don't understand. What is it that you can tell me to help me understand how I'm not getting paid? The guy looked up my information and then he told me, I'm going to connect you to a supervisor. Tell them just what you said to me. A female supervisor picked up. I said it to her. So she's looking and looking and she's like, we don't have any office notes on you. I'm seeing the doctor, the risk doctor, every six weeks. And it's like, what do you mean? Now, years ago I used to do medical accounting billing, so I know through experience that yous are not going to pay the bill without the support and evidence. So I tell her this and she says, you're right. And I said, yous are paying the bills because I'm getting bills, but I'm not getting bills for this. And she looks and she says, you're right. So she keeps looking. Then she's noticed that she has out-of-work notes. Like, you know, because I was bringing to administration the out-of-work notes that you get, like, out of work, out of school for 30 days. I'm giving that to administration. That's what they have at the workers' comp board, which doesn't make any sense, but they don't have my office notes. So I'm assuming then they were swapping notes and, you know, and that's what was being scanned in because it had me at 100% total temporary disability and some at 75%, which is a high rate, which because of no disability rate being listed, that's why I wasn't getting paid. So she asked me if I had any notes. I said I had five office notes on me at the time. She gave me a fax number, told me to send them in and call in two days. I called two days later, like she said, and soon as I gave them my number, my workers' comp number, they told me I had a check. It was close to $10,000. That was already mailed to me. Within two hours, I got a knock on my doorbell rung, and it was the check. They overnighted it. But by then, I was so far in debt that that just went right out the window because of my mortgage and all my other bills. I was basically living out of my account that was dwindling fast because of mortgage and things like that. Ms. McKay, can I just back up to one question that I had? Attached to your complaint in the district court, there was a report from a doctor. I think it was Kristin Murthy who said in June of 2018 that you could go back to work if you – so long as you didn't have to use your left arm, you can have light duty. And then there was also attached a return-to-work order that said you should come back but you would be – have restrictions, that you'd have no use of your left arm, no restraining of inmates, no pushing or pulling, no use of a firearm, which seems to me would keep you from being on the cell blocks and must be some kind of office work. Is that inaccurate? I mean, I thought that's what you were offered.  But then you said other people got light work but not you, so I was having trouble reconciling that. Okay. Dr. Christian Murthy was the original doctor. His original – he was the original IME. His first note was June 1st. He was actually amended three times. The 15th, it went on, the 11th, three different times he was asked to amend it and he put in his note he's being asked to amend it. And that's when he said about light duty. However, I or my attorney never received any accommodations for light duty, but yet was ordered to return back to work on midnight shift, my original shift, which is another violation of the county because light duty is only day shift 8 to 4, which in 2017 when I was working light duty, they did the same thing to me then, had me work in day shift and then night shift, and I wasn't getting my 10% shift differential. So, like I said, that's the thing that they do, but I never received, nor my attorney, of anything of light duty accommodations. He said he received some, but we've never received a copy of it to this day. Okay. Thank you, Ms. McKinney. You're reserved one minute for rebuttal. Thank you. Ms. Lee. Good afternoon, your honors. May it please the court. My name is Kimberly Hunt Lee. I'm an attorney with Sokoloff Stern, and we represent Appellee Dutchess County. The opinion in order of Judge Roman should be affirmed in its entirety. First point is that the court should not consider the appellant's reply brief and the documents submitted with the reply brief, as they are not required. Unfortunately, Ms. McKinney continues to submit new evidence unrelated to the second amended complaint here before this court, and the court, we ask that the court not consider those. The court should also not consider the arguments that were raised for the first time on appeal, and as we pointed out in our brief, we argue that the appellant has waived review of various claims that were not addressed in the main brief, including the 1981 claims, the ADA claims, and the FML claims. We believe these were all properly dismissed, and if the court is going to consider them, they are addressed in our brief. Arguably, the only issues before the court are the equal protection on the Title VII claims, and we believe that the court below correctly dismissed the second amended complaint. There are no comparators that are similarly situated to the plaintiff. The allegations are insufficient in the complaint on these points with respect to the equal protection claim. She does list 13 non-black officers and goes through a description of them in the complaint, and it is also noteworthy that the complaint and the second amended complaint were done through counsel, so while she is pro se on this appeal, she was not pro se at the time of the amended complaint and second amended complaint. We believe that the allegations are insufficient. They are conclusory, and we also would point out that Judge Roman correctly went through the analysis and granted the motion. With respect to the Title VII claims, there is no plausible inference of discrimination. I could answer some of the court's questions. If you have any with respect to the 207C, the FMLA, or the workers' comp, or we can just rely on the brief, the court would have any questions. Thank you, counsel. Ms. McKinney, you have another minute. I don't understand how they can say about the 207C when, again, I wasn't being paid, although they signed it saying that I was accepted. Two, as far as equal protection, I'm not sure what all of that is, but I'm sure with having officers come to my home unannounced, beating on my doors, and constantly ringing my doorbells, trying to force me to sign a sick leave with no pay, it's not equal protection. I don't feel equal protection either. As you see, she brung up those other officers, but she did not get in details of what their issues were, that it was way egregious and I'm being punished for only being hurt. You did not mention a part-timer who got paid for workers' comp for getting in an altercation, breaking up an altercation. You didn't bring up the sergeant that was sexually harassing a part-timer who didn't lose no pay and stayed at work but got promoted. You didn't mention the officer or the lieutenant who was getting DUIs and DWIs but continued to get promoted. You didn't bring up the motorcycle accident who was not even fully employed and got 207C for a year and a half. You didn't bring up the lieutenant who got paid for eight years on 207C until she retired. Ms. McKinney, we have your argument, we have your papers, and so thank you. Thank you. Thank you both for your argument today.